## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DELORES ANN OVERTON,**

**Claimant,**

**v.**                                                    **Case No:  6:18-cv-690-Orl-40DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## REPORT AND RECOMMENDATION

Delores Ann Overton (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits and supplemental security income.  Doc. 1.  Claimant contends that the Administrative Law Judge's (ALJ) decision to deny her benefits was "arbitrary, capricious, and was not supported by the law or the evidence."  *Id*.  Claimant requests that the Court remand the case for further consideration of her application consistent with the Social Security Administration's regulations.  *Id*.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

## I.      PROCEDURAL HISTORY

This case stems from Claimant's application for a period of disability and disability insurance benefits, and supplemental security income.  Doc. 1.  On July 21, 2014, Claimant filed her application for a period of disability and disability insurance benefits.  Doc. 1 at 1-2; Doc. 17-2.  On March 9, 2015, Claimant filed an application for supplemental security income.  *Id*.  On May 8, 2017, the ALJ found that she was not disabled within the meaning of the Social Security

Act from February 9, 2015[1] through the date of the decision.  R. 32.  The Appeals Counsel denied

Claimant's request for review on March 2, 2018.  R. 1.

## II.   <u>THE ALJ'S DECISION</u>

In the decision, the ALJ found that Claimant has the following severe impairments:

peripheral neuropathy, depression, and anxiety.  R. 19.  However, the ALJ determined that

Claimant did not have an impairment or combination of impairments that met or medically equaled

any listed impairment.  R. 21.

The ALJ found that Claimant has the Residual Functional Capacity (RFC) to perform "light

work" as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following specific limitations:

> [C]an lift, push, pull, and carry 20 pounds occasionally and 10
> pounds frequently; can stand, walk, and sit six hours each out of an
> eight-hour workday; cannot work at unprotected heights or around
> dangerous machinery; cannot have to drive as a condition of
> employment; limited to frequent fingering, handling, and feeling;
> limited to simple, routine tasks; and, can work with and respond
> appropriately to supervisors, coworkers, and the general public on
> an occasional basis.

R. 23.  The ALJ also found that Claimant did not engage in substantial gainful activity since

February 9, 2015, the amended alleged onset date.  R. 19.  The ALJ found that there were jobs that

existed in significant numbers in the national economy that Claimant could have performed

considering her age, education, work experience, and RFC.  R. 32.  The ALJ found that Claimant

was not disabled from February 9, 2015 through the date of the decision.  *Id*.

## III.   <u>STANDARD OF REVIEW</u>

The scope of the Court's review is limited to determining whether the Commissioner

applied the correct legal standards, and whether the Commissioner's findings of fact are supported

---

[1] The Claimant amended her alleged onset date to February 9, 2015.  R. 44-45.

by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.   **ANALYSIS**

    **Issue No. 1:   Whether the Substantial Evidence Supports the ALJ's Assessments of Claimant's B Criteria Limitations.[2]**

Claimant contends that the ALJ "impermissibly cherry-picked entries from certain records, and failed to even reference, much less consider, critical evidence of record favorable to [Claimant]." Doc. 21 at 15. In so doing, Claimant argues that the ALJ's assessment of her limitations in the B Criteria is unsupported and "resulted in harm throughout the rest of the decision." *Id*.

The ALJ considered whether Claimant's mental impairments, considered singly and in combination, meet or medically equal the criteria of listings 12.04 (affective disorders) or 12.06 (anxiety related disorders). R. 21. The listings describe impairments that the Commissioner

---

[2] The ALJ also found that the criteria under paragraph C was unsatisfied. R. 23. Claimant concedes that she does not meet the "paragraph C criteria" of Listing 12.04 or 12.06. Doc. 19, n.4.

considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1625(a), 416.925(a).  If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987), *cited in Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The Eleventh Circuit has described how the standard is met or equaled:

> In order to meet a listing, the claimant must (1) have a diagnosed condition that is included in the listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. In order to equal a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.925(c)-(d)).

Paragraph B of listing 12.04 and 12.06 require a claimant to demonstrate at least one extreme or two marked limitations in a broad area of functioning which are:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.   20 C.F.R. § 404.1520a(c)(3), 416.920a(c)(3).

Here, the ALJ found that Claimant had moderate limitations in all four of the areas of functioning.  R. 21.  As such, the ALJ determined that the "paragraph B" criteria were not satisfied because her mental impairments did not cause at least two marked limitations or one extreme limitation.  *Id*., citing 20 CFR part 404, subpart P, app'x 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[3]

---

[3] Claimant does not raise this issue, but the undersigned notes that the ALJ did not assign weight to the medical opinions he relied on during this step in the five-step sequential evaluation.  To the extent that he was required to do so, the undersigned finds that the error was harmless.  *See Tillman v. Comm'r Soc. Sec.*, 559 Fed. Appx. 975 (11th Cir. 2014) (finding that even though the ALJ failed

In support of her claim that the record was "cherry-picked," Claimant argues that the ALJ failed to consider: (1) the "longitudinal findings from Park Center;" (2) "critical" evidence from Claimant's functional report; (3) "critical" evidence from Dr. Roy's examination; (4) the GAF score of 47; (5) the Indiana Family and Social Services Administration's finding that Claimant is "medically frail;" and (6) physical examination findings, which further reveal the extent of her severe anxiety and depression.  Doc. 21 at 16-18.

There is some authority to support Claimant's argument that the evidence may not be "cherry-picked." *See Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (finding that the "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding."). However, the undersigned is not persuaded that Claimant's "cherry-picking" argument entitles her to relief under the circumstances of this case.

As an initial matter, with regard to the first three arguments, Claimant essentially provides a list of "findings" that the ALJ allegedly failed to consider and does not specify how the "findings" pertain to each of the four areas of functioning.  She states that certain findings were "noted" in the records and were ignored (Doc. 21, pgs. 16, 17), but does not explain how consideration of these notes supports a finding of an extreme or marked limitation in any of the areas.  Thus, Claimant waived the argument.  *See Jacobus v. Comm'r of Soc. Sec.*, 2016 WL 6080607, at *n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned.).

The only one of these three arguments that includes any level of specificity is her claim that the ALJ failed to consider critical evidence from Dr. Roy's examination.  Without further

---

to explicitly assign weight to the opinions of certain doctors, the error did not affect the ultimate result and was harmless.).   Regardless, Claimant waived the issue by not raising it.

analysis, Claimant states that "[u]ltimately, Dr. Roy opined that Plaintiff would have moderate limitations in her ability to understand, remember, and carry out even simple instructions in a sustained manner due to her trauma, depression, and anxiety."  Doc. 21 at 17, citing R. 506.  As such, it would appear that Claimant asserts that this finding should have been considered with regard to "understanding, remembering, or applying information."

Indeed, the ALJ did not cite to Dr. Roy's opinion in the discussion of this area of functioning.  *See* R. 22.  Even so, the ALJ determined that the evidence that was considered was "inconsistent with more than moderate limitations in this area of functioning," which is actually *consistent* with Dr. Roy's opinion.  R. 22.  In other words, even if Claimant provided an adequate argument to explain why the ALJ erred by not considering the opinion, there is no showing that Claimant had anything more than the assigned limitation.  *See Caldwell v. Barnhart*, 261 Fed. Appx. 188, 189 (11th Cir. 2008) (finding that the ALJ's failure concerning doctor's opinions was harmless error because the application of the doctor's limitations would not have changed the result.).

The undersigned recognizes that Claimant complains that the ALJ should have considered other notations in Dr. Roy's examination.  Doc. 21 at 17.  But again, Claimant does not discuss how these portions of the record lead to anything more than a moderate limitation, and the argument is, therefore, waived.  In any event, Claimant states that the ALJ should have considered Dr. Roy's notation that Claimant had to be "admonished to breathe deep and slow down a couple of times during examination."  Doc. 21 at 17.  It appears that Claimant cites to the notation in an attempt to challenge the ALJ's finding that Claimant's concentration was "strong."  The ALJ considered Dr. Roy's "disability evaluation" with regard to the area of concentrating, persisting, or maintaining pace.  R. 22.  In doing so, the ALJ stated that Claimant's concentration was

"strong."  R. 22.  Under the category of "concentration and attention," Dr. Roy provides "[i]n tasks above, (calculation, counting, etc.) and additional observations of the client in the context of this evaluation, her performance was consistently strong.  She was reminded however, to deep breathe and slow down a couple of times."  R. 505-506.  Thus, while Claimant is correct that Dr. Roy reminded her to breath deeply and slow down, that does not undermine Dr. Roy's concurrent opinion that Claimant's performance was strong; an opinion consistent with the ALJ's findings.

Further, the undersigned notes with regard to the same area of function that the ALJ stated that Dr. Roy's evaluation reflected that there was no evidence of "distortion in thought form."  R. 22.  This is incorrect.  Dr. Roy actually stated under the content, form, and complexity of cognition category of the evaluation that "Delores showed some evidence of distortion in form."  R. 506.

Even if the ALJ based the "moderate limitation" in the concentrating, persisting, or maintaining pace area on the foregoing inaccurate or incomplete citations to the record or failed to consider the other findings in Dr. Roy's report, the undersigned still finds that any error was harmless.  Nowhere in Dr. Roy's report does it reference "marked" or "extreme" limitations.  As such, consideration of the report as a whole does not support a finding of a greater limitation. Notably, assuming that Dr. Roy's findings would actually support a marked limitation in this area, because there is certainly no persuasive argument that there was an extreme limitation, Claimant has not demonstrated that there is *another* area of marked limitation and, therefore, no basis for relief.  *See Golden v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 174323 (M.D. Fla. 2015) (finding the ALJ's determination would not be affected as the claimant failed to establish a marked limitation in an additional domain or an extreme limitation in one domain.).

The same holds true for the other arguments concerning the "longitudinal findings" and Claimant's "function report."  Notwithstanding waiver, Claimant invites the Court to reweigh the

evidence, which is not permitted.  *See Heckler*, 703 F.2d at 1239.  To be sure, Claimant contends that "this is not a matter of reweighing the facts; rather, the inquiry is whether the ALJ ever properly considered the evidence before him."  Doc. 21 at 18.   But the undersigned notes that there is a fine line between evaluating the decision for "cherry-picking" and reweighing the evidence.   Assuming that Claimant's argument goes beyond a simple request that the Court reweigh the evidence, the undersigned still finds that there is substantial evidence to support the ALJ's decision on the "paragraph B" criteria, and that the ALJ did not impermissibly "cherry pick" evidence supporting the ALJ's conclusions and ignore substantial, contrary evidence.   Indeed, there is substantial evidence supporting the ALJ's finding that Claimant had less than marked limitations in all of the areas of functioning.

In addition to the first three arguments, Claimant next contends that the ALJ failed to consider her GAF score of 47, which she says indicates "serious symptoms or a serious impairment in social, occupational, or school functioning."  Doc. 21 at 17, citing R. 592.[4]  The GAF score indicates the clinician's subjective assessment of the individual's overall functioning, but does not itself reveal a particular type of limitation and does not constitute an assessment of a claimant's ability to work.  *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015); *Ward v. Astrue*, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008).  Furthermore, GAF scores bear no direct correlation to the severity requirements of the mental disorder listings.  *See Thornton*, 597 F. App'x at 613; *Lacina v. Comm'r, Soc. Sec. Admin.*, 2015 WL 1453364, at *6 (11th Cir. Apr.

---

[4] Claimant states, without support, that the GAF score was "assigned by Park Center practitioners." *Id*.  However, a review of the document containing that citation reflects that Julie Godsey, LCAC, gave the score.  R. 593.  The Commissioner describes Ms. Godsey as an "addiction counselor" who is not an "acceptable medical source."  Doc. 21 at 20.  The undersigned assumes that this assertion is correct because it is not aware of any relevant statutory or case law which mentions that position, the acronym, or reflects that an "LCAC" is an acceptable medical source.

1, 2015).  In fact, the Commissioner has "declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorder listing."  *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (per curiam) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (internal quotations omitted)).

Here, the ALJ's decision was supported by substantial evidence even though the ALJ did not refer to the GAF score.  *See* Lacina, 2015 WL 1453364, at *6 (finding that the ALJ's failure to mention or assign weight to GAF scores of 35 and 40 that can reflect major mental impairments was harmless error.).  Accordingly, the undersigned finds the ALJ's failure to consider the score does not entitle Claimant to relief.

In her fifth argument under this "issue," Claimant asserts that the ALJ improperly failed to consider the Indiana Family and Social Services Administration's finding that she is "medically frail." Doc. 21 at 17.  Claimant states this finding ". . . means, in relevant part, either: (1) disability mental disorder; (2) chronic substance abuse disorder; (3) serious and complex medical condition; or (4) physical, intellectual or developmental disability that significantly impairs the individual's ability to perform one or more activities of daily living."  *Id*. at 17-18.

While she correctly provides that SSR 06-03p identifies public and private social welfare agency personnel as other sources which provide special knowledge and insight into the severity of the impairment, Claimant's assertion does not show how the ALJ's finding regarding the "paragraph B" criteria limitation was unsupported.  There is no analysis to assist the Court in connecting the "medical frailty" finding to her conclusion that one of the disorders, conditions or impairments exist because that finding was made and the overall relevance of that finding. The undersigned finds that the argument is waived.  *See NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418,

1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). Further, there is also "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the decision considers the claimant's medical condition as a whole. See *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The undersigned finds that the decision meets this requirement. *See also*, *Voronova v. Astrue*, 2012 WL 2384044, at *1 (M.D. Fla. June 25, 2012) (where the ALJ's opinion extensively discussed other evidence in record, failure to mention opinion of "other source" was not reversible error, as substantial evidence supported the ALJ's decision to essentially afford no weight to the opinion).

Lastly, Claimant argues that the ALJ "fail[ed] to consider physical examination findings, which further reveal the extent of [her] severe anxiety (Tr. 515) and depression (Tr. 447-49, 509, 711-15)." This statement is the entirety of the argument and there is no analysis. Besides including the citation to the records, Claimant does not identify the findings that the ALJ allegedly failed to take into consideration or provide any argument beyond this conclusory sentence. As such, the undersigned finds that Claimant has waived this argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that "simply stating an issue exists, without further argument or discussion constitutes abandonment of that issue.").[5]

---

[5] Assuming the citation to authority was enough, the undersigned is still not persuaded that these records support the "cherry-picking" argument. The majority of the cited documents, (R. 447-49, 711-15) relate to emergency room visits for chest pain, cough, and back pain and do not deal with her depression. Further, with regard to R. 509, a page from a medical report from May 2015, the document does mention that Claimant's affect was flat, and her mood was anxious. However, the report specifically provides that the exam was done at the request of Social Security Disability and that Claimant was advised that no doctor/patient relationship would be formed, and no diagnosis, treatment, or follow-up would be given. R. 508. Again, the ALJ does not have to refer to every record and she fails to explain how this report undermines the ALJ's decision.

In sum, it is recommended that the Court reject Claimant's assignment of error with respect to the "paragraph B" criteria.

**Issue No. 2:   Whether the Substantial Evidence Supports the ALJ's RFC Determination in Light of All Record Evidence.**

Here, Claimant extends the "cherry-picking" argument to the ALJ's RFC finding that she can perform "light work" with specific limitations.  Like the previous issue, Claimant raises several perfunctory and unsupported arguments to attack the RFC.  The undersigned finds that most of her arguments are waived and there is no merit to this "issue."

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 § C.F.R. 404.1520(a)(4)(iv)).  The ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources.  20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

First, Claimant states that the ALJ "virtually ignored all evidence favorable to [Claimant] about *both* her physical and mental conditions."  Doc. 21 at 25 (emphasis added).  With regard to anxiety and depression, Claimant restates verbatim the arguments raised in issue no. 1 that the ALJ failed to consider "critical evidence" and the "ultimate opinion" from Dr. Roy; Park Center's "longitudinal findings," and the GAP score of 47.  *Id*. at 25-26.  Again, Claimant fails to explain how taking these records into consideration would have changed the outcome.  The ALJ found that she can perform light work with restrictions within the defined capacity and Claimant does not provide argument or authority to show that these "ignored" findings change her ability to function.  The argument is waived.  *Gaskey v. Colvin*, 2014 WL 4809410, at *7 (N.D. Ala. Sept.

26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh*, 561 F.3d at 1278).

Assuming waiver does not apply, under the RFC, the ALJ decision does discuss Dr. Roy's May 2015 consultative psychological examination. R. 28-29. In part, the decision provides the following:

> Dr. Roy opined that claimant's ability to understand, remember, and carry out simple instructions in a sustained manner was moderately impaired 'due to challenges with trauma, depression, and anxiety." She also opined that the claimant's ability to 'interact in a reasonably effective and stable manner' with the public, coworkers, and supervisors was moderately impaired, also due to past trauma, anxiety, and depression." Although Dr. Roy noted that claimant was 'relying' on her daughter and neighbors from home tasks, the claimant reported sharing chores with her teenage daughter, and she indicated that neighbors helped her with snow removal and mowing chores (the claimant did not have a lawnmower.) These reports do not appear to represent reliance on others for assistance due to effects of any mental impairments (Exhibit 6F).

> The State Agency has determined that mental impairments are severe, but that the claimant retains the capacity to understand, remember, and carry out simple tasks, and to relate on at least a superficial basis with coworkers and supervisors. The Agency consultants further determined that the claimant remains capable of attending to tasks for sufficient periods to complete tasks, and that she remains capable of managing stresses involved with simple work. (Exhibits 1A, 2A, 5A, 6A). while the [ALJ] has accorded some weight to these determinations, he notes that only 'mild' limitations in social functioning were determined. In granting some deference to the claimant's allegations with regard to difficulty with interactions, the [ALJ] is convinced that moderate limitations in this area are supported (consistent with Dr. Roy's opinion) (Exhibit 6F), and that workplace interactions should be occasional.

Based on the foregoing, it is clear that the ALJ did take into consideration Dr. Roy's "ultimate opinion" and there is no adequate argument that it is inconsistent with the RFC. The RFC limits Claimant to light work with simple routine tasks, and she can only work with and respond appropriately to supervisors, coworkers, and the general public on an occasional basis. Claimant fails to discuss exactly how Dr. Roy's opinion renders the RFC unsupported by substantial evidence.

Further, as stated under the undersigned's discussion of issue no. 1 and the "longitudinal findings," Claimant invites the Court to reweigh the evidence, which is not permitted under *Heckler* and, alternatively, the undersigned is not persuaded that these "ignored" findings reflect an inability to work beyond the limitations set by the RFC.

Moreover, the ALJ's decision was supported by substantial evidence even though the ALJ did not refer to the GAF score. *See* Lacina, 2015 WL 1453364, at *6 (finding that the ALJ's failure to mention or assign weight to GAF scores of 35 and 40 that can reflect major mental impairments was harmless error.). Accordingly, the undersigned finds the ALJ's failure to consider the score does not entitle her to relief.

In addition to the evidence related to her anxiety and depression, Claimant states that the ALJ "virtually ignored all the abnormal findings" with regard to her neuropathy. Doc. 21 at 26-27. Claimant states that her records reflect that she has "symmetric, progressive, sensory peripheral neuropathy in both feet (Tr. 397-98, 408, 470-71), which has remained unchanged despite treatment." Doc. 21 at 26-27. Claimant also cites to Dr. Bacchus's medical report and states that it reflects her "gait was slower in nature,[6] with some unsteadiness with heel/toe and tandem walking, and she is unable to hop or perform a full squat due to her neuropathy of lower extremities." Doc. *Id*. at 27. Claimant adds that her "providers noted fibrillation potentials in [Claimant's] right gastrocnemius muscle (Tr. 692), and also diagnosed neuropathy as progressing into left hand numbness (Tr. 694, 745)." *Id*.

---

[6] The report actually states that "[g]ait is slower in nature; however, appears normal in appearance." R. 509. The report also provides, which Claimant does not include, that her "[g]ait sustainability appears fair on even ground; no signs of stumbling or tripping today." *Id*.

Once again, to the extent that Claimant is seeking for the Court reweigh the evidence, the request is improper.  Claimant also fails to explain, through these records, how the RFC was not supported by substantial evidence.  As discussed at length by the ALJ, the records show that Claimant's gait remained normal during treatment, the Romberg (balance) testing was normal, pinprick sensation remained intact in the lower extremities, and neurological examinations showed no deficits during the most recent instances of treatment.  R. 26.  The ALJ stated that the "limitation has been defined due to findings in terms of decreased foot sensation, and as in addition, the claimant has reported difficulties with driving due to anxiety."  *Id.*

Also, the ALJ cited specifically to Dr. Bacchus' opinion which included the "final impression that "[g]iven claimant's c/o neuropathy, she should avoid climbing ladders, operating foot pedals, working on uneven ground or in unprotected heights."  R. 510.   The ALJ found that precluding work that would expose her to unprotected heights and dangerous machinery recognizes any decreased sensation in the lower extremities.  *Id.*[7]

 Further, the ALJ stated that he was limiting the Claimant to light work to recognize any hand weakness that may be present and was giving "some deference to Claimant in terms of allegations of hand numbness in further limiting the claimant to frequent, rather than constant, use of the hands."  *Id.*

Based on the foregoing, the undersigned finds that Claimant's arguments do not demonstrate that the ALJ "impermissibly" cherry-picked through the evidence to support his decision.  The ALJ clearly considered the record with regard to the neuropathy and included

---

[7] While Claimant quoted Dr. Bacchus' opinion, she failed to mention the "final impression" regarding her neuropathy.  *See* Doc. 21 at 27.

limitations to account for her condition.  Claimant's own list of selective findings does not render the RFC unsupported by substantial evidence.

Second, Claimant argues that the "ALJ's RFC is incomplete."  Doc. 21 at 27.  Claimant states "[c]ritically, the ALJ's limitations are insufficient to address a moderate limitation in concentration, persistence or pace."  *Id.*  While Claimant mentions the phrase "moderate limitation" here, she says nothing further as to where this limitation comes from in the record nor does she provide any discussion on the subject of concentration, persistence, or pace.  *See id.*  She does summarily state that "[a]s the Eleventh Circuit found in *Richter v. Comm'r of Soc. Sec.*, 379 F.App'x 959, 960-62 (11th Cir. 2010), given the facts in this case, this constitutes reversible error."  Doc. 21 at 27.  The problem is she does not actually "give the facts in this case" in support of her argument.  It is, therefore, waived.  *See* Singh, 561 F.3d at 1278 (explaining that "simply stating an issue exists, without further argument or discussion constitutes abandonment of that issue.").[8]

Claimant also states that the ALJ did not address her inability to respond to stress and the demands of work and work-like settings.  Doc. 21 at 27.  Claimant provides that her struggle with change-related stress and anxiety are well documented.  *Id.*  Specifically, Claimant states that she has panic attacks; has visited the ER with "anxiety, chest pain and nausea, while explaining that

---

[8] The undersigned notes that the Eleventh Circuit in *Richter* concluded that the ALJ erred because he failed to include all impairments in the hypothetical question to the vocational expert and the inquiry did not implicitly account for the claimant's deficiencies in concentration, persistence, and pace. 379 F.App'x at 962.  The decision provides that the expert's testimony and the ALJ's ultimate finding that the claimant was not disabled was unsupported by substantial evidence because there was no medical evidence that, despite these limitations, the claimant retained the ability to perform simple, repetitive, and routine tasks or unskilled labor.  *Id.*  As the Commissioner correctly argues, *Richter* is distinguishable because the ALJ specifically noted that Nurse Lothamer found that Claimant's symptoms were not serious enough to result in problems with maintaining attention and concentration to unskilled work.  R. 22.  As such, there is medical evidence that despite the limitations she could perform simple repetitive tasks as specified in the RFC.

'she had been going through a lot recently;'" she was fearful, more anxious, sleepless, and depressed at the prospect of upcoming travel; she took a day trip with a friend and the friend provided a narrative wherein she reported that Claimant panicked, screamed, and cried with her head in her lap; she does not do well with stress; she needs routine and help with activities; her anxiety is worse if she leaves the house or is around clocks; she has problems with people; she was "suspected for verbal abuse of a client at her last job;" she is suspicious of others; and she must leave if there is a disagreement with others. Doc. 21. at 28. In a conclusory fashion, Claimant appears to argue that these records show the RFC is not supported by substantial evidence.

While Claimant states that the ALJ did not address these factors, a review of the decision reflects that the ALJ did in fact consider her anxiety and stress. The ALJ discussed Claimant's testimony regarding the anxiety triggered by "things with numbers," her difficulty getting along with others, her sleep problems, her problems with people lying and being disrespectful, and her initial suspicion of others. R. 24. The ALJ compared these complaints to the medical evidence, which also related to Claimant's anxiety and depression. R. 25-30. Accordingly, it appears that the record refutes her statement that the issue was not addressed.

Also, Claimant does not explain how her list from the record actually undermines the ALJ's RFC determination. The mere existence of these records does not reveal their effect on the RFC. Claimant has not demonstrated how any of these records support a finding of greater limitations than those found by the ALJ. *See Sanchez v. Comm'r of Soc. Sec.*, 2013 WL 490029, at *4, n.1 (11th Cir. Feb. 8, 2013) (noting that plaintiff waived particular arguments by not expressly challenging the ALJ's findings.). The undersigned concludes that the ALJ's RFC determination was supported by substantial evidence in the record and she has not established any error by the ALJ with regard to her "well-documented" stress.

Claimant's final argument with respect to issue no. 2 is that the ALJ improperly weighed and rejected the opinion of certified nurse specialist Lothamer and Dr. Lambertson, a psychiatrist, who Claimant states were a part of her treatment team and had direct knowledge of her treatment at Park Center for over two years.  Doc. 21 at 28, 29, citing R. 29.  Claimant contends that because Dr. Lambertson was her psychiatrist, the ALJ should have considered it as a treating source opinion which must be weighed according to the regulatory factors.  *Id*. at 29.

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process.  In *Winschel*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  *Id*. at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

The ALJ must consider a number of facts in determining how much weight to give each medical opinion, including:  1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization.  20 C.F.R. §§ 404.1527(c); 416.927(c).

The ALJ considered the record as follows:

> As noted, Ms. Lothamer completed a mental impairment questionnaire on January 23, 2017, and she indicated that she had last seen the claimant in November 2016. Of note, although the questionnaire was countersigned by L. Lambertson, M.D., records from Park Center fail to reflect any direct interactions between Dr. Lambertson and the claimant.  Only ***partial weight*** has been given to Ms. Lothamer's opinion.  In terms of "psychiatric signs," Ms. Lothamer recorded flat

affect, sullen mood, and "feels anxious around others."  However, as thoroughly discussed above, mental status examinations during treatment did not routinely note these "signs."  Sullen mood was listed only during the initial evaluation, and mood was euthymic during the majority of subsequent visits.  While affect was flat during some visits, this was not consistently noted, and overall, mental status examinations were primarily unremarkable.  In addition, Ms. Lothamer opined that the claimant would be absent from work more than three days per month due to "being in public" (Exhibit 19F); however, when questioned at the hearing regarding why she would be absent from work at this rate, the claimant reported that being "tired" due to her medications would be the cause.

Ms. Lothamer also opined that symptoms would be expected to increase with fulltime work, but she then opened that the claimant's mental illness is not serious enough that she would have trouble maintaining concentration for an eight-hour workday "for unskilled type work."  In addition, Ms. Lothamer opened that the claimant could remain on task for 85 to 89 percent of the day, "if working full-time," and that limitations in interactions are "moderate."  Finally, although the claimant testified that sleep problems remain, even with Trazadone, and that resulting fatigue would result in excess absences, Ms. Lothamer noted that the claimant is "able to sleep with Trazadone."  In addition, she indicated that the claimant does not have difficulty initiating sleep or staying asleep, and that she does not need to rest or sleep during the day.  (Exhibit 19F).

Information in the questionnaire contradicts some of the claimant's testimony, and some symptoms and limitations reflected in the responses are inconsistent with or unsupported by Ms. Lothamer's treatment notes, and records of therapy sessions. (Exhibits 11F-15F).  As such, full weight cannot be given to the opinions reflected in the questionnaire.

R. 29 (emphasis added).

The undersigned notes that the ALJ does not expressly state that Dr. Lambertson is not a treating physician.  Even so, given the comment regarding the lack of interaction and the determination that the opinion will only receive partial weight, the undersigned will assume that the ALJ did not assign the opinion this designation.  On that note, the Commissioner argues that the ALJ correctly observed that the records fail to reflect that Dr. Lambertson had any direct interaction with Claimant and, therefore, her argument that the opinion should have been considered a treating source opinion fails.  Doc. 21 at 35.

Indeed, Claimant does not appear to assert that she had direct interaction with Dr. Lambertson, but instead seems to argue that given Dr. Lambertson's position on her team and the fact that his name appears on the records, this mandated consideration as a treating source. Assuming Claimant is correct, the undersigned is still not persuaded that the ALJ erred in according appropriate weight. The undersigned accepts that a treating physician's opinion is generally given more than a "partial weight." Indeed, the opinion of the treating physician . . . 'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440). "'[G]ood cause' exists when the: 1) treating physician's opinion was not bolstered by the evidence; 2) evidence supported a contrary finding; or 3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. at 1241 (citing *Lewis*, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id*.

In this case, the ALJ's "partial weight" determination is supported by his detailed finding that the questionnaire is inconsistent with the record as a whole. The ALJ articulated inconsistencies in Claimant's testimony and also, primarily, compared the opinion to Nurse Lothamer's own notes from treatment and therapy sessions. For comparison, the ALJ referred to Park Center's Outpatient Notes; Initial Assessment Plan; Skills, Training, and Development and Coordination of Care; Treatment Plan; and Office Treatment Records. R. 536-659. His findings are supported by the exhibits.

As such, assuming the "treating source" designation is appropriate, the undersigned finds that good cause existed and the ALJ did not err in assigning "partial weight." *See D'Andrea v. Comm'r of Soc. Sec. Admin*., 2010 WL 2977529, at *4 (11th Cir. 2010) (per curiam) (rejecting

argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reasons for disregarding the opinion and the record supports it.").

In sum, it is recommended that the Court reject Claimant's assignment of error with respect to the RFC.

**Issue No. 3:    Whether the Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Credibility.**

Claimant argues that the ALJ impermissibly based his "credibility finding on selected normal findings from the record and minimal daily activities, while ignoring the significant body of evidence favorable to [Claimant]." Doc. 21 at 39. First, Claimant contends that the ALJ erred "in his application of [her] minimal daily activities." *Id.* at 40. Claimant states that the ALJ impermissibly focused on the "one-time event" that she traveled unaccompanied on an airplane and was able to enter into conversations with strangers, and that she said her neighbors were "awesome" because they helped mow and shovel the snow. *Id.*

While Claimant states that "this is contrary to the significant body of evidence most favorable to the [Claimant], which the ALJ impermissibly ignored," she does not specify what the "body of evidence" is that is in her favor or provide a citation for the undersigned to find the records on which she relies. *See id.* Accordingly, Claimant's argument is waived. *Gaskey v. Colvin*, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh*, 561 F.3d at 1278).

Assuming waiver did not occur, the ALJ provided a long recitation of the record regarding Claimant's neuropathy and mental impairments and compared the subjective complaints and the record evidence at length. A claimant may establish "disability through his own testimony of pain and other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per

curiam).  If the ALJ finds that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 404.1529(c)(1).  If the ALJ decides to discredit the claimant's testimony, he or she must articulate specific and adequate reasons for doing so.  *Foote*, 67 F.3d at 1561-62; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, the ALJ stated that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  R. 25.

Then with regard to the neuropathy, the ALJ considered her complaints at emergency room visits; her consultation and visit with neurologist, Dr. Hamdi; a visit with Dr. Addo; and a consultative physical examination with Dr. Bacchus, Jr.  *Id*. at 25-26.  The ALJ compared results from the examinations and testing with Claimant's own reports and found that limiting her to the light exertional level recognizes any hand weakness that may be present and precluding work that would expose her to unprotected heights and dangerous machinery recognizes any decreased sensation in the lower extremities.  *Id*. at 26.  The ALJ stated that the RFC precludes work that would require the operation of a motor vehicle due to findings related to decreased foot sensation and the claimant's reported difficulty with driving due to anxiety.  *Id*.

The undersigned finds that the ALJ provided the specific and adequate reasons for his decision with regard to Claimant's physical impairment.  The undersigned will not disturb a clearly

articulated credibility finding that is supported by substantial evidence.  *See Foote*, 67 F.3d at 1562.

Likewise, with regard to Claimant's mental impairments, the ALJ provided a detailed discussion of Claimant's visits and found that "the record as a whole is inconsistent with the level of mental, and physical, limitations alleged by the claimant. . . ."  R. 30.  Beyond Claimant's "awesome" neighbor comment and her unaccompanied travel, the ALJ adequately considered her testimony and her complaints during visits, evaluations, and therapy sessions as compared to other record evidence.  Inconsistencies between a claimant's testimony, medical evidence, and daily activities may provide a valid reason for an adverse credibility determination.  *See Long v. Colvin*, 2015 WL 12850567, at *3 (M.D. Fla. 2015) (concluding that the claimant's lack of support in the medical evidence combined with inconsistencies in the claimant's statements regarding his limitations provided substantial evidence supporting the ALJ's credibility determination.).

The undersigned finds that the ALJ's reasoning is adequate to discredit the subjective complaints, to the extent that they were discredited, and there is no basis to find error.

Next, Claimant contends in support of her credibility argument that the ALJ was required to consider her financial need, lack of insurance, and transportation.  Doc. 21 at 41.  Claimant states that "an ALJ is required to consider any reasons why the claimant may not have sought treatment."  *Id*.  Claimant adds that the ALJ may not draw inferences about an individual's symptoms and their functional effects from a failure to seek treatment without first considering any explanations that the individual may provide.  *Id*., citing SSR96-7p, 1996 WL 374186 at *7 (July 2, 1996).[9]

---

[9] Claimant acknowledges that SSR 96-7 was rescinded but provides that the Agency still maintains that there are many reasons that an individual may not pursue treatment.  Doc. 41, citing SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017).

Indeed, a claimant's inability to afford medical care excuses her lack of such care. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that the court "agree[s] with every circuit that has considered the issue that poverty excuses noncompliance [with prescribed medical treatment]") (citations omitted). Although a remediable or controllable medical condition is generally not disabling, "when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Id.* "Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." *Id*, citing *Ellison v. Barnhard*, 355 F.3d 1272, 1275 (11th Cir. 2003).

As an initial matter, to the extent that Claimant is asserting that the ALJ improperly "drew inferences," there is simply no showing that a lack of treatment or non-compliance impacted the decision. The ALJ does not state that Claimant failed to receive, seek, or follow treatment. At most, the ALJ mentions that she missed two visits with H. Horti, M.S. on December 1, 2016 and December 29, 2016, which Claimant attributed to being in Texas,[10] and Claimant reported that Parkview Behavioral Health recommended that she be admitted, but she declined.[11]  R. 27, 28. If it is Claimant's argument that the ALJ made an unfavorable finding based on these "improper inferences," the undersigned finds no merit. *See Ellison*, 355 F.3d at 1275 (holding that an ALJ's failure to consider a claimant's inability to afford treatment did not constitute reversible error when the ALJ did not rely primarily on a lack of treatment to find that the claimant was not disabled.).

---

[10] The ALJ mentions that despite her assertion that she was in Texas, the record reflected that she was in the emergency room on December 20, 1996 in Indiana.  R. 28.

[11] The ALJ stated that the Park Center evaluation mentioned that Claimant made this report, but no records in this regard were offered.  R. 27, citing to Ex. 12F.

That said, it appears that the crux of Claimant's argument is that the ALJ *should have* considered more evidence of her inability to afford and obtain treatment.  Claimant apparently argues that the ALJ's statement that "there is a 'lack of evidence' to support [her] claim" means he improperly failed to consider her lack of insurance, transportation, and finances.  Doc. 21 at 41. Claimant does not provide an actual citation to the decision to direct the undersigned to this quotation.  Assuming it exists, Claimant still fails to provide any citation to authority or argument regarding how these factors pertain to the credibility analysis.  As such, it appears that the argument is waived.

Moreover, Clamant fails to explain how consideration of the evidence she does cite to would have changed the credibility determination.  Specifically, Claimant states that the ALJ ignored evidence in the record that she struggled to obtain medical treatment because she lacked insurance.  Claimant does not provide a discussion, but cites to Dr. Addo's May 6, 2015 notation that she never followed up with "neurology for peripheral neuropathy until now.  She had no insurance."  Doc. 21 at 41, citing R. 513.  Claimant states that the record further reflects that she struggled with transportation, as she could not drive and found it difficult to take public transportation.  Doc. 21 at 41.  Again, there is no discussion, but citations to the record which provide that she only drives to appointments (R. 504) and "she mostly uses public transportation, however, the people look scary."  (R. 321).[12]  Claimant adds that the ALJ also failed to consider

---

[12] The undersigned notes that the record belies Claimant's argument that the ALJ failed to take into consideration Claimant's lack of transportation.  The ALJ stated that Claimant "indicated [in her testimony] that she had stopped driving 'for a number of reasons (including not having a working car) and that she takes Medicaid transportation to her Park Center appointments and that these must be scheduled three days in advance.  R. 24.  Under the RFC, Claimant cannot drive as a condition of her employment.  R. 23.

her financial limitations as evidenced by R. 466 which reflects that she "did not pick up two medications because each was too expensive."  Doc. 21 at 41.

Even if the ALJ failed to take these limited records into consideration, the evidence does not undermine the ALJ's decision.  The ALJ has provided a thorough explanation for his credibility determination, which is supported by substantial evidence, including the objective medical evidence, medical opinions, treatment history, subjective complaints, and her activities.  The undersigned finds that Claimant's citations to these records without further explanation do not undercut the decision.  *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 540 (11th Cir. 2016) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding that in social security disability cases, credibility determinations fall within the province of the ALJ and will not be overturned unless they are not supported by substantial evidence.).

Finally, Claimant argues that the ALJ "failed to factor how the Indiana Family and Social Services Administration's determination that [Claimant] was 'medically frail' supported [her] credibility."  Doc. 21 at 42.[13]  Again, Claimant states that this agency concluded that Claimant "suffered from, in relevant part, either:  (1) disability mental disorder; (2) chronic substance abuse disorder; (3) serious and complex medical condition; or (4) physical, intellectual or developmental disability that significantly impairs the individual's ability to perform one or more activities of daily living."  *Id*. at 17-18.  The ALJ specifically provides that he considered this determination.

---

[13] Claimant's argument also includes the following statement: "Further, as noted above, the ALJ erred in his analysis of the objective findings in this case.  As such, the objective evidence the ALJ *did* consider cannot serve as substantial evidence for his credibility finding."  Doc. 21 at 42.  The undersigned does not know exactly where in Claimant's discussion "as noted above" applies.  Further, the undersigned has already found that the ALJ's credibility finding is supported by the substantial evidence.  This conclusory and unsupported statement does not entitle Claimant to relief.

R. 30.  Even so, the ALJ found that he was not bound by it.  *Id.*  Claimant does not explain how this finding was in error and there is no citation to authority regarding how the determination should have been factored into the ALJ's findings.  Thus, the argument appears to be waived.

Notwithstanding waiver, the undersigned reiterates that substantial evidence supports the ALJ's credibility determination.

In sum, it is recommended that the Court reject Claimant's assignment of error with respect to her credibility.

### Issue No. 4:   Whether the Substantial Evidence Supports the ALJ's Ultimate Decision.

While this issue at first blush sounds like another attack on the substantial evidence as a whole, Claimant raises a new argument that all three jobs the VE identified exceed the limitations established in the RFC "due to required reasoning level or degree of interaction with others."  Doc. 21 at 46.  Clamant argues that "[w]here the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence."  *Id.*

After the ALJ presented a hypothetical individual who is the same age, educational and vocational background as Claimant with the limitations of the RFC finding,[14] the VE testified that the Claimant would be able to perform the requirements of representative occupations such as hand packager, housekeeping, and office helper.  R. 32.

---

[14] The ALJ added that the individual can only occasionally lift, push, pull, or carry up to 20 pounds; can frequently lift, push, pull, or carry up to 10 pounds; can stand, sit, or walk six hours each, out of an eight-hour work day; should not be working around unprotected heights or dangerous machinery; cannot be required to operate a motor vehicle as a condition of employment; limited to simple routine tasks; limited to frequent fingering, handling, and feeling; can work and respond appropriately to supervisors, co-workers, and the general public on an occasional basis.

Claimant states that only jobs requiring a Reasoning Level of 1 are consistent with simple tasks. Claimant asserts that since office helper and hand packager job require a Reasoning Level of 2, they do not comply with the RFC or the hypothetical questions both of which contain the limitation of simple, routine, and repetitive work.

As the Commissioner points out, even if Claimant's argument is correct regarding the Reasoning Level for officer helpers and hand packagers, the vocational expert testified to, and the ALJ correctly identified, at least one job existing in substantial numbers in the national economy that Claimant could perform. Because the VE also testified that Claimant could perform the job of cleaner, housekeeping, the error was harmless. *See Bohn v. Astrue*, 2013 WL 494059, at *6 (M.D. Fla. Feb. 7, 2013) (unpublished) ("[E]ven if there had been an error with respect to [certain jobs], that error would be harmless since [one] job alone supports the law judge's finding that there are jobs in significant numbers in the national economy that the plaintiff can perform."); *Schultz v. Colvin,* 2013 WL 12167537, at *4 (M.D. Fla. Feb. 28, 2013) (unpublished) ("Thus, any error is harmless because the ALJ's determination is still supported by substantial evidence as the VE identified at least one job that Plaintiff could perform.") (citing *McLain v. Astrue*, 2008 WL 616094, at *7 (M.D. Fla. Mar. 3, 2008)).

With respect to the housekeeping job, Claimant states that even though the position has a Reasoning Level of 1, the job description "suggests far greater abilities than being 'away from the public.'" The job is described as "[c]leans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties . . ." Claimant argues that this would "necessarily involve tasks that are not away from the public." Doc. 21 at 47, citing R. 23.

The undersigned finds that Claimant's challenge to the inclusion of that position has no merit. The ALJ did not limit Claimant to be "away from the public," but rather included the limitation to "work and respond appropriately to supervisors, coworkers, and the general public on an occasional basis." Claimant points to nothing in the housekeeping position that conflicts with the limitation. As such, Claimant is not entitled to relief on this argument.

In sum, it is recommended that the Court reject Claimant's assignment of error with respect to the three jobs.

## V.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.    **AFFIRM** the final decision of the Commissioner; and

2.    Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant and close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida on May 13, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable John Carlton
Administrative Law Judge
c/o Office of Disability Adjudication and Review
6511 Brotherhood Way
Fort Wayne, Indiana 46825